[S. F. No. 16296. In Bank.—September 14, 1939.]

BLAIR HART, Jr., Petitioner, v. FRANK C. JORDAN, as Secretary of State, etc., et al., Respondents.

Gregory, Hunt & Melvin, Darwin Bryan and Hanna & Morton for Petitioner.

Earl Warren, Attorney-General, Robert W. Harrison, Chief Deputy Attorney-General, and Grant B. Cooper for Respondents.

THE COURT.—By this proceeding in *mandamus* the petitioner seeks to compel the respondents, as Secretary of State and State Printer, respectively, to desist from taking any further steps in the matter of preparing for the ballot and submitting to the voters at the special election to be held on November 7, 1939, a proposed referendum on ''The California Oil and Gas Control Act'' enacted at the last session of the legislature (Stats. 1939, ch. 811). The question presented for determination is whether a referendum which has qualified for submission to the voters must be presented at a special election called for the purpose of presenting a particular initiative measure.

On July 1st the Governor of California by proclamation fixed November 7th as the date of a special election at which there shall be submitted to the voters for adoption or rejection an initiative constitutional amendment entitled ''Retirement Warrants''. It appears that on July 27th the attorney-general prepared a title and summary of the chief purpose and points of a referendum petition against ''The California Oil and Gas Control Act'', *supra,* and since that time this petition has been signed by approximately twice the number of persons required by the Constitution to submit the measure to the electors. If on or before September 18th this petition, certified as having been signed by ''qualified electors equal in number to five per cent of all the votes cast for all candidates for Governor at the last preceding general election'', is presented to the Secretary of State, the challenged enactment of the legislature shall be submitted to the electors ''at the next succeeding general election occurring at any time subsequent to thirty days after the filing of said petition or at any special election which may be called by the Governor, in his discretion, prior to such regular election . . . ''. (Const., art. IV, sec. 1.) As the petitioner asserts that there are now on file the names of sufficient electors to qualify the referendum petition, the question for decision primarily concerns the construction of the constitutional provision in connection with certain statutes relating to elections.

Article IV, section 1, of the Constitution relates not only to referendums but also to initiative petitions. It specifies with particularity the requirements of each of such classes of petitions, and also the elections at which proposed or challenged laws are to be submitted to the voters. An act proposed by an initiative petition for submission directly to the electors must be presented ''at the next succeeding general election occurring subsequent to 130 days after the presentation aforesaid of said petition, or at any special election called by the Governor in his discretion prior to such general election''. This differs from the provision concerning initiative measures to be first submitted to the legislature, in that the general election must occur ninety days after the presentation of the petition and the special election need not be one ''called for such purpose.'' Issues raised by a referendum petition must be submitted to the

People at the next succeeding general election occurring at any time subsequent to thirty days, after the filing of the petition or at any special election called by the Governor in his discretion.

In considering these different provisions, the petitioner contends that because the Constitution provides that "no law or amendment to the Constitution, proposed by the Legislature, shall be submitted at any election unless at the same election there shall be submitted all measures proposed by petition of the electors, if any be so proposed", in all other cases it is discretionary with the Governor which qualified initiative or referendum measures shall be submitted at a special election called for a particular purpose. There are two answers to this contention. In the first place, the Constitution, for obvious reasons, provides that in the particular situation specified, all qualified measures must be submitted to the People at one time. This requirement does not apply when initiatives to be submitted directly to the People and referendums are the only measures which have qualified for submission to the People. In the second place, the legislature in providing that a special election may be called by the Governor, left it within his power, as a matter of discretion, whether to call such an election. But when he has acted in the exercise of discretion, all measures which are qualified to go before the People by the constitutional provisions must be placed upon the ballot. This is the plain mandate of the Constitution and a court has no authority to change the requirements which the People have imposed.

The petitioner places considerable reliance upon the provision of the Constitution that the failure to submit any referendum measure "at the election specified in this section" shall not prevent its submission at a succeeding general election. This can only mean that if for any reason a referendum measure is not submitted to the voters as required by the Constitution, it shall not thereby fail but must be placed before them at a succeeding general election. This provision safeguards the power reserved by the People.

As against this construction, however, are certain statutory provisions fixing times for the doing of acts in connection with an election on a referendum measure greater than the constitutional period of thirty days. For example, the Constitution provides that "all measures submitted to a

vote of the electors, under the provisions of this section, shall be printed, and together with arguments for and against each such measure by those in favor of, and those opposed to, it shall be mailed to each elector in the same manner as now provided by law as to amendments to the Constitution, proposed by the Legislature; and the persons to prepare and present such arguments shall, until otherwise provided by law, be selected by the presiding officer of the Senate''. (Art. IV, sec. 1.) Under section 1195 of the Political Code, arguments for or against a proposed constitutional amendment or other proposition to be submitted to the People ''shall be submitted to the secretary of state within ninety days after the adjournment of the legislature''. A succeeding section authorizes the Secretary of State, in the event the argument for or against a referendum measure is not filed as required by the Constitution, to make a general press release eighty-five days prior to the date of the election, inviting electors to submit such arguments within sixty-five days prior to the election. (Sec. 1195c, Pol. Code.)

Another requirement laid upon the Secretary of State is that not less than forty-five days before the election he shall furnish each county clerk and registrar of voters a stated number of pamphlets containing the text of the measures to be submitted at such election, with the ballot titles and arguments thereon. The pamphlets are to be mailed to the voters not more than forty days nor less than fifteen days prior to the election. (Sec. 1195b, Pol. Code.)

The essential purpose of these provisions is to give the voters information concerning the measures on the ballot. It does not appear that the statutory requirements cannot be either fully or substantially complied with by the respondents in preparing material for the coming election, but wherever they conflict with constitutional provisions, the latter must prevail.

The alternative writ of mandate heretofore issued herein is discharged and a peremptory writ is denied.