[No. A038352. First Dist., Div. One. June 14, 1988.]

JAY PATTERSON, as Registrar of Voters, etc., Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent;
BOB GEARY, Real Party in Interest and Appellant.

[No. A039856. First Dist., Div. One. June 14, 1988.]

JAY PATTERSON, as Registrar of Voters, etc., Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent;
TERENCE FAULKNER et al., Real Parties in Interest and Appellants.

COUNSEL

Louise H. Renne, City Attorney, Burk E. Delventhal and Thomas J. Owen, Deputy City Attorneys, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

Terence Faulkner, in pro. per., and Arlo Hale Smith for Real Parties in Interest and Appellants.

OPINION

**RACANELLI, P. J.**—These two cases present identical questions concerning the propriety of the deletion of ballot arguments from the San Francisco voter pamphlets for the general elections held in June and November of 1987. We have consolidated the appeals in order to consider appellants' challenge to the constitutionality of Elections Code sections 3795 and 5025.

FACTS

*Geary Appeal, A038352*

Appellant Bob Geary and others submitted several written arguments for inclusion in the official San Francisco voter pamphlet for the June 1987 election as authorized by San Francisco Charter section 9.112, paragraph 1 and San Francisco Administrative Code section 5.74, paragraph 1. These arguments were submitted in opposition to two referenda on the ballot: Proposition "A," an ordinance to rezone the site of the former Polytechnic High School at 701 Frederick Street from P (Public) to RH-3 (House, Three-Family); and Proposition "B," an ordinance to rezone the Balboa Reservoir South site at Ocean and Phelan Avenues from P (Public) to RH-1 (House, One-Family).

Pursuant to provision of the Elections Code,[1] the city attorney, on behalf of the registrar of voters, thereafter filed this action in superior court to strike certain statements in the arguments, because the material was "false, misleading, or inconsistent . . . ." (See §§ 3795, 5025.)

The trial court found, by "clear and convincing proof," that the submitted ballot arguments "contain[ed] material that is misleading and/or incon-

---

[1] All further statutory references are to the Elections Code unless otherwise indicated.

sistent with the requirements of the San Francisco Charter and Administrative Code providing for the submission of ballot arguments . . ." and declared that such material should be deleted before the pamphlet was printed. Judgment was entered granting a peremptory writ mandating deletion of the offending material. This appeal immediately followed in which appellant raises several claims of error, including the inapplicability of the relevant Elections Code provisions, jurisdictional defects and the unconstitutionality of the relevant statutes.

### *Faulkner Appeal, A039856*

Appellants Terence Faulkner, Robert Silvestri, Bob Geary, Patrick Fitzgerald, Max Woods, Dennis J. Mark and Arlo Hale Smith submitted several written arguments for the official San Francisco voter pamphlet for the November 1987 election as authorized by the same charter and administrative code provisions.

The first argument was submitted in favor of Proposition "A," a $28 million bond issue for improvement of police facilities. The second argument was in opposition to Proposition "D," an $18 million bond issue for improvement of park and recreation facilities, including rehabilitation of Kezar Stadium. The third argument was submitted in opposition to Proposition "P," a charter amendment proposal authorizing district election of supervisors.

The city attorney, again acting on behalf of the registrar of voters, filed this action below to strike certain statements in the arguments alleging the material was "false, misleading, or inconsistent . . . ." (See §§ 3795, 5025.)

The trial court found by "clear and convincing proof" that the submitted ballot arguments contained similarly offending material and declared that such material should be deleted before the pamphlet was printed.

Judgment was entered granting peremptory relief. In this appeal which immediately ensued, appellants raise essentially similar claims of error.

■ As is usual in review of most election cases, the fact that these elections have occurred circumscribes a reviewing court's ability to grant full relief.[2] "Under certain conditions, disputes concerning election procedures are properly reviewable by an appellate court even though the partic-

---

[2] We take judicial notice that appellants prevailed on three of their ballot positions: In June, Proposition B (Balboa rezoning) was defeated; in November, Proposition A (police facilities bond issue) was passed; and Proposition P (district election of supervisors) was defeated.

ular election in question has already taken place. Although a writ of mandate would now be a meaningless remedy for appellant, we nonetheless may consider his contentions since the issues raised are of general public interest, and are likely to occur in future elections in a manner evasive of timely appellate review. (*Unger* v. *Superior Court* (1984) 37 Cal.3d 612, 614 [209 Cal.Rptr. 474, 692 P.2d 238]; *Ferrara* v. *Belanger* (1976) 18 Cal.3d 253, 259 [133 Cal.Rptr. 849, 555 P.2d 1089] [both involving election disputes].)" (*Gebert* v. *Patterson* (1986) 186 Cal.App.3d 868, 872 [231 Cal.Rptr. 150].) Because the issues raised before us are of continuing public interest, we elect to reach the merits of the consolidated cases.

## DISCUSSION

### I.

■ Appellants first contend that Election Code provisions concerning ballot arguments do not apply to San Francisco because it is a charter city and county. The city attorney acknowledges that the California Constitution gives San Francisco plenary authority over the conduct of local elections. (Cal. Const., art. XI, § 5, subd. (b).) However, the city charter explicitly provides that "[a]ll provisions of the general laws of this state, . . . respecting . . . initiative, referendum and recall petitions, elections . . . shall be applicable to the city and county *except as otherwise provided by this charter or by ordinance* . . . ." (S.F. Charter, § 9.103, ¶ 4, italics added.)

The charter also provides for a voter pamphlet on local ballot measures as follows: "Whenever any measure is required by this charter to be submitted to the voters of the city and county at any election, the registrar shall cause the measure or policy to be printed in pamphlet form and shall mail the same with a sample ballot to each voter, at least 10 days prior to the election. This pamphlet may include any other material required to be printed and mailed. *The board of supervisors shall, by ordinance,* provide for the format of said pamphlet and for the submission, review, selection, printing and inclusion of *arguments in favor of or in opposition to* any measure contained in said pamphlet." (S.F. Charter, § 9.112, ¶ 1, italics added.)

Accordingly, section 5.74 of the San Francisco Administrative Code sets out the procedures for the submission of ballot arguments: "Any individual voter, group of voters, or association of citizens, or any combination thereof, upon deposit of an amount sufficient to defray the cost of printing as estimated by the Registrar of Voters, may submit to the Registrar of Voters for action pursuant to the provisions of this Article, a written argument for or against any measure which is to be voted on at any election in the City and County. Said argument shall be filed with the Registrar of Voters not

less than 71 days prior to the election at which the related measure is to be voted upon." Other sections prescribe the length of the written argument, authorization and review for compliance. (See S.F. Admin. Code, §§ 5.75—5.77-1.) Section 5.74 further requires the registrar to provide a 10-day examination period (after arguments are submitted) "as provided by California Elections Code Sections 3795 and 5025." The referenced statutes[3] (chaptered in the same 1980 legislation) provide in identical language, as pertinent: "During the 10-calendar-day examination period provided by this section, any voter of the jurisdiction in which the election is being held, or the clerk, himself or herself, may seek a writ of mandate or an injunction requiring any or all such materials to be amended or deleted. A peremptory writ of mandate or an injunction shall be issued only upon clear and convincing proof that the material in question is false, misleading, or inconsistent with the requirements of this chapter, and that issuance of the writ or injunction will not substantially interfere with the printing or distribution of official election materials as provided by law."

&ndash; Thus, the city charter and administrative code refer explicitly to the challenged code sections and do not purport to establish conflicting regulations or a different scheme of review.

The challenged statutes authorize review and amendment or deletion of material that is "false, misleading, or inconsistent with the requirements of this chapter."[4] In logical context, San Francisco Administrative Code section 5.74 authorizes judicial review for material that is false, misleading, or inconsistent with the requirements of the San Francisco Administrative Code, its charter and any applicable state regulations.[5]

## II.

Appellants' major challenge is directed to the constitutionality of sections 3795 and 5025. They argue the statutes violate the right of free speech in that they are vague, overbroad and operate as a prior restraint on

---

[3] We observe that appellant Geary's brief incorrectly refers to section 10013.5 (examination of voter's pamphlet containing candidate's written statement) as a result of original miscitation by city attorney. Since the relevant statutory language and standard of proof are identical, we consider the arguments as appropriately directed to sections 3795 and 5025.

[4] Chapter 2 details the procedural requirements for county elections (§ 3700 et seq.) while chapter 3 does the same for municipal elections (§ 4000 et seq.).

[5] Appellants incorrectly read footnote 2 in *Gebert* v. *Patterson, supra*. (186 Cal.App.3d 868, 872.) There, the court had reference to the supremacy of a charter "home rule" provision over a general law dealing with the same subject matter. (See *District Election etc. Committee* v. *O'Connor* (1978) 78 Cal.App.3d 261, 269 [144 Cal.Rptr. 442] and authorities cited.) Here, in contrast, the San Francisco Charter-endorsed ordinance explicitly adopts the state procedure as its own.

protected political speech. (See U.S. Const., 1st Amend.; Cal. Const., art. I, § 2.)[6]

■ Obviously, the state enactments carry a strong presumption of constitutionality. Any challenge to the constitutionality of a statute must be supported by a strong showing of infirmity, and a statute will be declared unconstitutional only with great restraint. (See *Brown* v. *Superior Court* (1971) 5 Cal.3d 509, 520 [96 Cal.Rptr. 584, 487 P.2d 1224].)

Political speech is, of course, protected under both the federal and state Constitutions. However, it is not the traditional political speech of campaign literature, public speeches or demonstrations, or even public solicitation, that is at issue herein. Rather, the challenge focuses on a specific instrument funded by the city in order to convey information to the voters about an upcoming election. The medium of communication involved was established for a specific purpose: to provide the voters with a pamphlet containing all ballot measures and the arguments "in favor of or in opposition to any measure contained in said pamphlet." (S.F. Charter, § 9.112, ¶ 1; Admin. Code, § 5.74, ¶ 1.) The city expressly established this limited forum reserved for debate of the relative merits of the ballot propositions.

Recently, this court (Division 4) discussed the relationship between the San Francisco voter's pamphlet and protected First Amendment rights (in the context of a challenged prepayment fee): "Although state legislation permitting ballot arguments in the voter's pamphlet originated as early as 1911 (*Ferrara* v. *Belanger, supra,* 18 Cal.3d at p. 263), we cannot conclude that the voter's pamphlet comes within the definition of a traditional public forum.

"The speech activities permitted in the voter's pamphlet—unlike those in traditional public fora such as streets and parks—are narrowly circumscribed to the ballot measures proposed for public consideration. The California Supreme Court has long recognized that the 'essential purpose of [ballot argument] provisions is to give the voters information concerning the measures on the ballot.' (*Hart* v. *Jordan* (1939) 14 Cal.2d 288, 292 [94 P.2d 808].) As such, the voter's pamphlet more closely fits the definition of a 'limited' public forum (see *Perry Ed. Assn.* v. *Perry Local Educators' Assn., supra,* 460 U.S. at p. 46, fn.7 [74 L.Ed.2d at p. 805, fn. 7]) which "may be created by government designation of a place or channel of communication for use *by the public at large* . . . for the discussion of *certain* subjects. [Citation.]" (*Cornelius* v. *N.A.A.C.P. Legal Defense & Ed. Fund* (1985) 473

---

[6] We are aware that a related proceeding is presently pending before the United States District Court for the Northern District of California. (*Geary* v. *Renne,* C 87-4724 AJZ.)

U.S. 788, 802 [87 L.Ed.2d 567, 580, 105 S.Ct. 3439], italics added.)" (*Gebert v. Patterson, supra,* 186 Cal.App.3d 868, 873-874.)

Undoubtedly, the city has a significant interest in the conduct of its elections. " '. . . It is clear that the integrity of elections, essential to the very preservation of a free society, is a matter "in which the State may have a compelling regulatory concern." ' [Citation.]" (*Brown v. Superior Court, supra,* 5 Cal.3d 509, 524.)

Furthermore, the voter's pamphlet can have a substantial impact on the equality and fairness of the electoral process. "Unlike other vehicles for partisan political argument, the pamphlet is printed by a governmental body and distributed to all registered voters. The arguments set forth therein are likely to "carry greater weight in the minds of the voters than normal campaign literature . . . ." (*Knoll v. Davidson* (1974) 12 Cal.3d 335, 352 [116 Cal.Rptr. 97, 525 P.2d 1273].) In addition, an argument contained in the voter's pamphlet can influence the judicial process since, in many instances, such pamphlets "may constitute the only legislative history of an initiative measure adopted by the voters." (*Board of Supervisors v. Lonergan* (1980) 27 Cal.3d 855, 866 [167 Cal.Rptr. 820, 616 P.2d 802].)" (*Gebert v. Patterson, supra,* 186 Cal.App.3d at p. 874.)

■ Restricting information in the voter pamphlet to material which is neither false, misleading nor inconsistent with the purpose of the forum represents the city's chosen method to best foster the integrity of the election process and to aid its citizens in making informed voting choices. The pamphlet is essentially publicly subsidized, with mailing and distribution costs borne by the city and the authors of ballot arguments charged a minimal sum to defray printing costs. (S.F. Admin. Code, §§ 5.74, 5.74-1.)

Still, because protected rights of speech are implicated, the government's restrictions must be narrowly drawn. Here, the city has provided adequate safeguards: first, no government official or employee is granted unfettered discretion to censor ballot arguments. Instead, the registrar (or any individual voter) must seek a writ of mandate from a neutral judicial officer.

Nonetheless, appellants claim that even this impartial procedure to amend or delete material operates as an unlawful prior restraint on speech. (See *Freedman v. Maryland* (1965) 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734].) But the authorities upon which they rely (see, e.g., *ibid.*; *Southeastern Promotions, Ltd.* v. *Conrad* (1975) 420 U.S. 546 [43 L.Ed.2d 448, 95 S.Ct. 1239]; *Blount v. Rizzi* (1971) 400 U.S. 410 [27 L.Ed.2d 498, 91 S.Ct. 423]) condemn unrestrained *administrative* censorship, a significant circumstance

which is nonexistent under the adopted code requirements for review by a neutral magistrate. *Freedman* prescribed prompt final judicial decision, precisely the remedy afforded by the challenged provisions. (Appellants simply fail to acknowledge the limited public forum created by way of the pamphlet.)

Additionally, the subject provisions demand proof of the offensive nature of the material in question by a clear and convincing standard, a qualitatively heavier burden of proof.

Finally, the definitive restrictions imposed (that the challenged statements be "false, misleading or inconsistent") are content-neutral and carefully tailored to promote the established purpose of the limited public forum. The "essential purpose of [ballot argument] provisions is to give the voters information concerning the measures on the ballot." (*Hart* v. *Jordan* (1939) 14 Cal.2d 288, 292 [94 P.2d 808].) Submitted arguments which are not clearly germane to the ballot proposition, whether in support or opposition, are inconsistent with the basic purposes of the limited public forum specifically established by the legislation.[7]

Most importantly, the provisions under attack neither limit nor curtail the ability of individuals or groups to assemble, to speak, to distribute literature or to lobby public opinion in whatever form and content they choose. (Cf. *Vanasco* v. *Schwartz* (S.D.N.Y. 1975) 401 F.Supp. 87, affd. *sub nom. Schwartz* v. *Vanasco* (1976) 423 U.S. 1041 [46 L.Ed.2d 630, 96 S.Ct. 763] [voiding New York campaign laws banning false or discriminatory comment in all phases of election].)

As previously noted, the charter expressly authorizes the board of supervisors to provide for the pamphlet format and "for the submission, review, selection, printing and inclusion of arguments in favor of or in opposition to any measure . . . ." (S.F. Charter, § 9.112, ¶ 1.) Moreover, nothing in the charter *requires* that *all* submitted arguments be included. If the city were confronted with the problem of numerous unrelated or misleading arguments, arguably the board could elect to limit the number of arguments to be printed or to prescribe an order of preference as mandated in the Elections Code for counties and noncharter cities. (See §§ 3783, 3786, 4015, 5013, 5016.)

---

[7] We reject appellants' suggested analogy between this standard of review and that involved in defamation cases. The regulations are not intended to provide remedial relief for claimed injury to reputation or privacy interests; rather, the regulations are exclusively designed for the singular purpose of assuring fair access to a limited public forum established to convey information to the voters.

We hold that the limited public forum established in accordance with the provisions of the *Elections Code* and the city charter as a channel of communication for the discussion of electoral propositions does not impermissibly encroach upon protected First Amendment rights.

III.

*Geary Appeal*

Appellant Geary contends that the deleted ballot arguments, characterized by the city attorney as "idle scandel-mongering [*sic*]" and "base personal attacks" inconsistent with the purposes of the limited public forum, were neither misleading nor inconsistent. Having reviewed the deleted materials (reproduced verbatim in Appen. A),[8] we explain our reasons upholding the rulings below.

The personal attacks concerning Hagan's marital problems and Callinan's financial circumstances bore no relationship, certainly none which could be considered reasonable, to the question whether the Poly High School property should be rezoned, the only subject before the voters. Hagan's name had been mentioned in connection with possible development of the Balboa property, the property proposed for rezoning under Proposition B.

The statements concerning Callinan's financial status were totally unrelated to the proposed rezoning. Since there was no specific development project or potential developer before the voters, they could have been easily misled by the statements into believing that they were also voting to approve or disapprove specific individuals.

The statements deleted from the second argument were similarly misleading and inconsistent with the singular purpose of providing relevant information supporting or opposing specific ballot propositions. The Balboa property was not the subject of Proposition A. And no information was presented concerning the relative merits of the proposed rezoning or any other problems associated with the proposed zoning change. Appellant's remedy for any election fraud or improper interference with the right to petition was through conventional legal channels and not the voter's pamphlet.

The *ad hominem* attack on the two city officials reflected in the third argument again had no relationship to the ballot proposition to rezone the

---

[8] The necessity to recite the repugnant personal references is regrettable.

Poly High School property. In fact, the statement is an apparent reference to a frivolous lawsuit filed after the June 1986 election accusing the officials of impropriety in connection with an earlier proposal regarding development of the Balboa site.[9]

 ██ We conclude there was no error in ordering the offensive materials stricken as misleading and inconsistent.[10]

## IV.

### Faulkner Appeal

██ These appellants register a similar complaint regarding statements stricken as misleading or inconsistent. The city attorney counters that the deleted materials amounted to "deliberate disinformation" inconsistent with the purposes of the limited public forum and were properly stricken. We agree.

The argument submitted in favor of Proposition A (police facilities bonds) consisted of a short paragraph describing appellants' organization as

---

[9] The city directs our attention to several relevant and appropriate arguments related to the rezoning proposal which appellant has failed to mention, namely: changes in traffic patterns, deterioration of neighborhood character, burdens upon public utilities, preservation of historically significant structures and competing policy issues of schools versus housing.

[10] We have considered and rejected Geary's companion challenge to the trial court's jurisdiction to issue the writ grounded on claims of joinder defects.

Relying on *Sonoma County Nuclear Free Zone* v. *Superior Court* (1987) 189 Cal.App.3d 167 [234 Cal.Rptr. 357], appellant asserts that the proponent of a ballot proposition must be joined as a party in any challenge to the written ballot argument. The reliance is misplaced. In *Sonoma County Nuclear Free Zone,* this court concluded that proponents of an initiative measure were proper parties to a mandate proceeding directing the county clerk to accept opposing ballot arguments submitted after the statutory deadline. (§ 3784.) Unlike the case before us, the Sonoma County initiative election dealt with a single, simultaneous ballot argument (for and against) to be printed with each side given space for timely rebuttal. (§ 3783 et seq.)

Here, in contrast, the San Francisco voter pamphlet allows an unlimited number of arguments for each side with no official spokesperson and no opportunity for rebuttal. Moreover, the litigation here concerned the accuracy of the arguments submitted within the guidelines set forth in the Elections Code. That is, the substantive proposition itself was not at issue, and the direct or beneficial interest of an official spokesperson was not implicated. The relief sought and granted did not detrimentally impact the proposition's official proponent so as to require joinder. (See Code Civ. Proc., § 389, subd. (a).)

Nor was error manifested in the omission to join the Lake Merced Republican Club as an alleged cosponsor of the challenged ballot arguments. First, the club is not a party to this appeal, raised no objection below and apparently has heretofore claimed no interest in this lawsuit. More importantly, Terence Faulkner, a named party below but not to this appeal, was required to sign the ballot arguments on behalf of the club and to authorize their submission. (See S.F. Admin. Code, § 5.75.) And no argument is made that Faulkner was not so joined or served. The claimed nonjoinder defect is specious.

"Citizens Against Government Waste," a nonpartisan group "dedicated to rating candidates and endorsing ballot measures." The statement then described their efforts on previous ballot measures and concluded with recommendations on mayoral candidates and on *all* ballot measures. The trial court ordered everything deleted except the sentences describing the organization and the recommendation on Proposition A.

Clearly, the superficial attempt to insert what amounted to appellants' own "slate card" into the nonpreferential, city-sponsored pamphlet was inconsistent with the purpose of the limited forum. Moreover, information concerning the group's history and recommendations relating to other ballot measures was not an argument for or against this particular bond issue. The material was properly ordered stricken.

As to the argument submitted in opposition to Proposition D (a bond issue to rehabilitate Kezar Stadium), the trial court ordered the words "politically favored" stricken from the sentence: "This main portion calls for a municipally-financed partial demolition by [politically favored] private contractors of nothing less than Kezar Stadium . . . ."

The ballot proposition itself obviously did not authorize or intimate demolition by politically favored contractors. Thus, the modifying language contained in the submitted argument was patently misleading. Furthermore, the city charter explicitly provides for a competitive bidding process, a policy confirmed through declarations of city officials. (See S.F. Charter, § 7.200 et seq.) The implication of corruption or official misconduct is in no wise germane or related to the merits of the specific bond issue.

The materials ordered deleted from the argument submitted in (successful) opposition to Proposition P (see Appen. B) tended to impugn the motives and integrity of an individual alleged to be the "principal architect" of the measure. The city maintains that Ms. Hestor was not a candidate for election and that the implications of her alleged wrongdoing have no relationship with the ballot issue of district elections. In Brown v. *Superior Court, supra,* 5 Cal.3d 509, upon which appellants rely, the Supreme Court upheld disclosure requirements concerning campaign financing, reasoning that such information aided the voters in exercising their franchise to know the identity of those supporting or opposing particular ballot measures. *(Id.,* at p. 523.) However, in the context of the limited public forum provided by the voter pamphlet, the limitations imposed (that printed arguments be directed for or against a ballot measure) apply equally to all submitters and do not prevent or curtail traditional forums or forms of public speech attacking any measure, its supporters or its detractors.

Appellants' collateral complaints of "selective enforcement" of the statutes are wide of the mark. Under the apposite code provisions, *any* voter may seek a writ of mandate or an injunction to delete allegedly improper material. The challenged review procedure does not comprise a vague and unenforceable "relevancy test." To the contrary, the statutory directive represents a legitimate legislative objective to delete material from the informational voter pamphlet that is palpably false, misleading, or inconsistent with the requirements of the chapter, a standard of sufficient specificity to pass constitutional muster. Application of the standard to the limited public forum by a neutral magistrate, acting only upon clear and convincing proof, fully complies with minimum constitutional requirements.

In view of our determinations herein, we dismiss appellants' request for attorney fees as moot.

The judgments, and each of them, are affirmed.

Newsom, J., and Holmdahl, J., concurred.

The petition of all appellants for review by the Supreme Court was denied September 14, 1988.

APPENDIX

## APPENDIX A - GEARY APPEAL - A038352

*The following statements were ordered stricken:*

Arguments submitted in opposition to Proposition A:

(1) "In *Hagan* v. *Hagan* (San Francisco Superior Court No. 810459), Bernard Hagan was sued by his own ex-wife, Mrs. Dolores J. Hagan, for "FRAUD AND DECEIT AND BREACH OF FIDUCIARY RELATIONSHIP".

"In official court documents, Mrs. Hagan has alleged:

". . . (T)he Defendant, BERNARD P. HAGAN, falsely and fraudulently, and with intent to deceive and defraud the Plaintiff (Mrs. Hagan), represented to the Plaintiff (Mrs. Hagan) that she should sign various legal documents, contracts, deeds and lease, and that such signing would benefit the community estate . . . (I)n truth and in fact, by executing these legal documents, contracts, deeds and leases, Plaintiff (Mrs. Hagan) was divested of her rightful share of the community estate . . . (T)hat Defendants (including Bernard Hagan) were guilty of fraud and malice, and that . . . Plaintiff (Mrs. Hagan) should be awarded exemplary and punitive damages against said Defendants (including Bernard Hagan) in the amount of $5 million."

"Another "sterling" character is Poly High developer Thomas Callinan. In 1986, Callinan filed a joint financial statement with his wife claiming a net worth of about $8 million. Several months later, a divorce suit was filed, which cut his net worth by hundreds of thousands, if not millions, of dollars. No official amendment was ever filed with the City reflecting this loss of net worth by Callinan."

(2) "In 1985, political thugs were hired by Balboa Reservoir developer Bernard Hagan to interfere with a citizen petition campaign to stop the give-away of 12.3 acres of city land to Hagan for under $37,000.

"In 1986, political thugs were hired by Poly High developers to interfere with the petition drive to stop 3 acres of public land from being given away to the developers for free for at least 75 years. One grandmother, who was circulating petitions against this give-away, was assaulted and battered by a political thug hired by the developers."

(3) "The developers have a lot to lose. The incentive for voter fraud by supporters of A and B is great.

"That's why two City officials, Bill Witte and Barbara Smith, are currently being sued by a taxpayer on claims they illegally used City resources to campaign for the developers."

APPENDIX

## APPENDIX B - FAULKNER APPEAL - A039856

The trial court additionally orderd the following paragraphs stricken from the argument submitted in opposition to Proposition P: "The principal architect of Proposition P is Sue Hestor. Ms. Hestor makes a living filing suits against builders and then receiving cash settlements. As stated by one opposing attorney in the *Chronicle* 'A lot of developers think the money amounts to legal extortion.'

"Like Madame LaFarge of *A Tale of Two Cities,* Sue Hestor can often be found knitting at meetings of the Board of Supervisors while that body nonchalantly guillotines away at our tax dollars.

"Now Citizeness Hestor wants to guillotine away at *your* right to vote, by letting you select only 1, rather than 11, supervisors!"