Bob GEARY, Robert Silvestri; Dennis Mark; Melissa Gundrun; Wayne Johnson; David Soule; Max Woods; Peter Johnson; Robert Gebert; Election Action; Terence Faulkner; Sudi Trippet, Plaintiffs–Appellees,

v.

Louise RENNE, San Francisco City Attorney; Diane Feinstein; Jay Patterson; San Francisco Board of Supervisors; City and County of San Francisco; San Francisco Registrar of Voters, Defendants–Appellants.

Dennis MARK; Bob Geary; Robert Silvestri; Terence Faulkner; Max Woods; Alexa Smith, Plaintiffs–Appellees,

v.

Michelle CORWIN, Acting Registrar of Voters; Louise Renne, San Francisco City Attorney; City and County of San Francisco, Defendants–Appellants.

Dennis MARK; Bob Geary; Robert Silvestri; Terence Faulkner; Max Woods; Alexa Smith, Plaintiffs–Appellants,

v.

Michelle CORWIN; Louise Renne, San Francisco City Attorney; City and County of San Francisco, Defendants–Appellees.

Bob GEARY, Robert Silvestri; Dennis Mark; Melissa Gundrun; Wayne Johnson; David Soule; Max Woods; Peter Johnson; Robert Gebert; Election Action; Terence Faulkner; Sudi Trippet, Plaintiffs–Appellants,

v.

Louise RENNE, San Francisco City Attorney; Diane Feinstein, Mayor; Jay Patterson; San Francisco Board of Supervisors; City and County of San Francisco; San Francisco Registrar of Voters, Defendants–Appellees.

Nos. 89–15601, 89–15603, 89–15719 and 89–15720.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1990.

Decided Sept. 14, 1990.

See also 708 F.Supp. 278.

Arlo Hale Smith, San Francisco, Cal., for plaintiffs-appellees-cross-appellants.

Randy Riddle, Deputy City Atty., San Francisco, Cal., for defendants-appellees.

Pebbles Trippet, San Francisco, Cal., in pro. per., for plaintiff-appellee-cross-appellant.

Before SNEED, FARRIS and FERNANDEZ, Circuit Judges.

FARRIS, Circuit Judge:

This case involves a facial challenge to the constitutionality of four sections of California election law. Cal.Elec.Code §§ 3795, 5025, 10012 & 10013.5. Three sections (3795, 5025, and 10013.5) allow the state to remove "false, misleading, or inconsistent" material 1) from candidate statements and 2) from statements made by persons or groups supporting or opposing a question on the ballot, when the

statements are submissions made to a voters' information pamphlet. The fourth section (10012) prohibits candidate statements in the pamphlet from making reference to the candidate's party affiliation or any partisan activities when the office sought is a nonpartisan position. The government assembles, publishes, and distributes the pamphlet.

The district court struck down the first three sections, *except* it upheld the removal of "inconsistent" statements, and it struck down all of the fourth section. We find all sections to be constitutional.

### ISSUES

1) Does the government violate the first amendment by excluding statements submitted for a voter information pamphlet, when a judge finds those statements, by clear and convincing evidence, to be false, misleading or inconsistent with the requirements of the statute?

2) Does the government violate the first amendment by prohibiting candidates for nonpartisan offices from making reference to their party affiliation or partisan activities in the candidate's statement?

### FACTS

The City and County of San Francisco, pursuant to local and state law, prepares, publishes, and distributes a voters' information pamphlet. The pamphlet contains statements from individuals and groups, arguing for or against the initiatives, ordinances, propositions, or measures appearing on the ballot. It also contains personal statements from candidates for nonpartisan office. The pamphlets, along with a sample ballot, are mailed to all voters at least ten days prior to the election. Some ballot statements are recognized as being from "official" supporters or opponents and are included free of charge. San Francisco Admin.Code § 5.74.4. All other ballot statements may be included free of charge if the person or group submitting the statement collects a sufficient number of signatures or if it pays a fee to defray the cost of publication. San Francisco Admin.Code §§ 5.74.8, 5.74.9. The candidate *may* be charged for his pro rata share of the expense of publishing his personal candidate statement. Cal.Elec.Code § 10012. The statements can range in length from 250 to 400 words, depending on which specific statute section authorizes the statement. *See, e.g.,* Cal.Elec.Code § 10012.

Ballot statements are subject to editing pursuant to three virtually identical sections of the California Elections Code: sections 3795 (county ordinances, initiatives, or measures, and rebuttals), 5025 (municipal proposals, ordinances, or measures, and rebuttals), and 10013.5 (candidate statements). Each provides for a ten-day period before the pamphlet is submitted for printing during which voters or the clerk may review the statements and

> may seek a writ of mandate or an injunction requiring any or all of the material in voter's pamphlet to be amended or deleted. A peremptory writ or an injunction shall issue only upon clear and convincing proof that the material in question is false, misleading, or inconsistent with the requirements of this chapter, and the issuance of the writ or injunction will not substantially interfere with the printing or distribution of official election materials as provided by law.... [T]he candidate [or author] shall be named as the real party in interest.

*See, e.g.,* Cal.Elec.Code § 10013.5. At issue is whether the power to strike statements as "false, misleading, or inconsistent with the requirements of this chapter" constitutes an infringement of the first amendment. The "requirements of this chapter" are simple with reference to section 3795 and 5025: the arguments must be "for or against" the measure. *See, e.g.,* Cal.Elec. Code § 3783. Section 10013.5's "requirements" are a bit more specific: it *"may* include the name, age and occupation of the candidate and a brief description ... of the candidate's education and qualifica-

tions...." (Emphasis added.) *See* Cal. Elec.Code § 10012.

The section controlling reference to candidate party affiliation provides

> [t]he statement shall not include the party affiliation of the candidate, nor the membership or activity in partisan political organizations.

Cal.Elec.Code § 10012.

## STANDARD OF REVIEW

We review first amendment issues de novo. *See Acorn v. City of Phoenix,* 798 F.2d 1260, 1263 (9th Cir.1986); *Carreras v. City of Anaheim,* 768 F.2d 1039, 1042 n. 2 (9th Cir.1985).

## DISCUSSION

### I. Ballot Statements: Sections 3795, 5025 and 10013.5

#### a. Statutes Not Unduly Burdensome on First Amendment Interests

■ This case involves control of political speech in the setting of a political campaign. Several cases have invalidated statutes attempting to regulate campaign speech. *See, e.g., Brown v. Hartlage,* 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982) (invalidating state regulation that directly restricted a candidate's offering of ideas to the voters); *Vanasco v. Schwartz,* 401 F.Supp. 87 (D.N.Y.1975) (three judge panel) (invalidating statute which prohibited any attacks on candidates' race, sex, religion, or ethnic background, as well as misrepresentations of any candidates' qualifications, position, or party affiliation), *aff'd,* 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 630 (1976); *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974) (invalidating law requiring paper to provide reply space to criticized candidate); *Mills v. Alabama,* 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966) (invalidating law prohibiting election day editorials urging vote a certain way). Those cases involved blanket prohibitions of all statements falling within the purview of the applicable statute, including criminal and civil penalties.

This case is different. The government makes no attempt to keep the material it deletes from the voters' pamphlet from generally reaching the public. The regulations would merely preclude the material from reaching the public through the government's voters' pamphlet, a single narrow forum. There is no criminal or civil penalty involved. The challenged statutes place no restriction upon political speech by any candidate or person except as it is submitted for inclusion in the voters' pamphlet. Plaintiffs make no showing that more traditional avenues for political expression are inadequate to disseminate their ideas.

Geary argues that the possibility of litigation may "chill" expression, *see New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), even though there is no provision for penalty or punishment. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974) ("punishment of error [in deciding to publish speech that may not be protected] runs the risk of inducing a cautious and restrictive exercise of the constitutionally guaranteed freedoms of speech and press"). We find this argument unpersuasive. The statute does not include sanctions. An author risks nothing except possible deletion. The government voters' pamphlet supplements rather than diminishes usual political speech and therefore enhances dissemination of information. Further, this is not a situation where the government is itself speaking, raising the concern that its great resources may be able to "drown out" private voices and exert undue influence. *See generally* M. Yudof, *Government Speech* (1983).

Although the government does not author the statements, it has an interest in the messages that it assembles, publishes, and distributes and may therefore appear to approve. It is comparable to the situation of a private publisher. *See Estiverne v. Louisiana State Bar Ass'n,* 863 F.2d 371 (5th Cir.1989). The Supreme Court has

recognized that, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974), *quoted in Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983). The state has a proper interest in assuring the integrity of the election process. The state wants to provide accurate and sensible information to its voters, enabling them to make the most informed use of their franchise. These are significant government interests recognized by the Supreme Court. *See Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 109 S.Ct. 1013, 1023, 103 L.Ed.2d 271 (1989) ("State may regulate the flow of information between political associations and their members when necessary to prevent fraud and corruption."); *Anderson*, 460 U.S. at 796, 103 S.Ct. at 1574, 75 L.Ed.2d 547 ("There can be no question about the legitimacy of the State's interest in fostering informed and educated expressions of the popular will in a general election."); *Brown v. Hartlage*, 456 U.S. 45, 52, 102 S.Ct. 1523, 1528, 71 L.Ed.2d 732 (1982) ("States have a legitimate interest in preserving the integrity of their electoral processes."); *Buckley v. Valeo*, 424 U.S. 1, 27, 96 S.Ct. 612, 638, 46 L.Ed.2d 659 (1976) ("Congress could legitimately conclude that the avoidance of the appearance of improper influence 'is also critical ... if confidence in the system of representative Government is not to be eroded to a disastrous extent.' ").

■ It is significant that the pamphlet is prepared and distributed by the government. We have previously held that the voters' pamphlet "constitutes a limited public forum but ... that a lower level of scrutiny attaches to this classification...." *Kaplan v. County of Los Angeles*, 894 F.2d 1076, 1079 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2590, 110 L.Ed.2d 271 (1990). Treating the pamphlet as a limited forum where the government can regulate the speech involved is valid. In *White v. City of Norwalk*, 900 F.2d 1421 (9th Cir. 1990), we held that restrictions on speakers at town council meetings were valid, when limited to disturbing and impeding speech that was out of order or irrelevant: "Principles that apply to random discourse may not be transferred without adjustment to this more structured situation." *Id.* at 1425. The Supreme Court has recognized the legitimacy of creating such forums for limited topics. *See City of Madison School Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175 n. 8, 97 S.Ct. 421, 426 n. 8, 50 L.Ed.2d 376 (1976) ("Plainly, public bodies may confine their meetings to specific subject matter and may hold nonpublic sessions to transact business."); *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985) (public forum may be created by government designating "place or channel of communication ... for the discussion of certain subjects"). In creating the voters' pamphlet the government created a limited subject forum intended to provide clear and basic statements able to assist the voter in the exercise of her franchise. Retaining the power to remove certain statements ensures that the speech will properly satisfy the limited subject forum and ensures that the forum will not be abused. The statutes adequately identify the scope of discussion acceptable in this forum. The statutes look for statements that are "false," "misleading," and "inconsistent with the requirements of this chapter," criteria which, although requiring analysis of the content of the challenged statements and the ballot measures, do not distinguish between viewpoints.

In analyzing these statutes it is helpful to remember the core values and concerns of first amendment protection, embodied and recognized in a passage from *New York Times v. Sullivan*:

Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.

376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964). *New York Times v. Sullivan* considered three main factors in its analysis. First, it recognized, as demonstrated in the above quote, the first amendment interest in wide-open debate. Second, it considered the government interest in the challenged restriction, which in the present case is significant. Third, it considered the deterrent nature of the challenged regulation, which in the present case is non-existent. Following this pattern we conclude that the challenged statutes are constitutional.

█ The voters pamphlet does not *suppress* protected expression or in any serious way limit the debate of public issues. The statute does not prohibit the deleted statements generally, but only in the pamphlet. The authors do not have an independent constitutional interest in publishing false, misleading, or inconsistent statements in the pamphlet. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974) ("[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues.").

The present restrictions are a least restrictive alternative to achieve the state's significant interests. *See United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *cf. Buckley v. Valeo,* 424 U.S. 1, 28, 96 S.Ct. 612, 639, 46 L.Ed.2d 659 (1976) ($1000 campaign contribution limit "focuses precisely on the problem of large campaign contributions ... while leaving persons free to engage in independent political expression, to associate actively"). The burden in all instances is on the party challenging the statement, who must satisfy a level of clear and convincing proof that the statements are "false," "misleading," or "inconsistent." *See generally* Blasi, *Toward a Theory of Prior Restraint: The Central Linkage,* 66 Minn. L.Rev. 11 (1981) (concluding that placing burden on speaker to pursue determination of constitutionality is a major factor in self-censorship). To the extent it may be difficult to determine what is "false," "misleading," and "inconsistent" for political speech, that is reflected in and taken into account by the standard of proof required.

Moreover, there can hardly be a proper purpose in conveying demonstrably false, misleading or inconsistent[1] information to the voters by means of the pamphlet. *See Gertz v. Welch,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1976). If proponents and candidates insist on foisting that kind of information on the voters, they surely do not have the right to the government's help in carrying out their enterprise.

The challenged statutes are a reasonable manner of regulation, narrowly tailored to serve a significant government interest, while leaving open more than ample alternative channels of communication.

### b. *Immediate Appellate Review Is Not Necessary*

█ Geary argues that the lack of immediate appellate review of the decision to delete material renders the statutes unconstitutional. We disagree. The statutes satisfy the procedural safeguards required by *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965): 1) the burden of proving that the material is within the regulation must rest with the censor; 2) the reviewing process must not effectuate a final censoring via delay; 3) the pro-

---

1. We note that as to "inconsistent" there may be some concern, since the California Court of Appeals said this means material which is "not clearly germane...." *Patterson v. Board of Supervisors,* 202 Cal.App.3d 22, 31, 248 Cal.Rptr. 253 (1988). From the general thrust of that court's opinion and from the burden of proof set forth in the statutory language, we believe that was a mere inadvertent misplacing of a modifier and that what the court meant was "clearly *not* germane." We are confident that the California Supreme Court would so interpret the language of the statutes, and we adopt that reading.

cedure must assure a prompt and final judicial decision, "because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression...." *Id.* at 58, 85 S.Ct. at 738. The appellate review required in *Nationalist Socialist Party v. Village of Skokie,* 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977), is not followed in all cases. Such review is not required here, because unlike *Skokie,* there is a hearing on the merits at the first instance of injunction. *Cf. Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33, 104 S.Ct. 2199, 2207, 81 L.Ed.2d 17 (1984) (upholding protective order, "prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny," noting that paper could still publish information if gained through other means).

## II. Candidate Statements: Section 10012

Section 10012 prohibits candidates from making reference in their candidate statements, published in the voters' information pamphlet, to "party affiliation" or to "membership or activity in partisan political organization." Enforcement is through section 10013.5. Our analysis of this section parallels that of the ballot sections above.

While the restriction implicates first amendment interests it does so to preserve the scope of a limited subject forum created by the government to aid in the establishment of a nonpartisan government structure. The government may regulate speech in a limited public forum to preserve the usefulness of the forum in accomplishing the purpose for which it was created. *See City of Madison v. Wisconsin Employment Relations Comm'n,* 429 U.S. 167, 175 n. 8, 97 S.Ct. 421, 426 n. 8, 50 L.Ed.2d 376 (1976); *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 818–19, 105 S.Ct. 3439, 3457–58, 87 L.Ed.2d 567 (1985) (Blackmun, J., dissenting). The restriction advances the government interest in establishing a nonpartisan system of government with the aid of a limited public forum in a narrowly tailored manner.

The recent en banc decision, in the related case of *Geary v. Renne,* 911 F.2d 280 (9th Cir.1990), does not require a different conclusion. In fact, that decision supports our result.

The en banc decision invalidated section 6(b) of Article II of the California Constitution. Section 6(b) prohibits political parties from supporting, endorsing, or opposing a candidate for nonpartisan office. The section 6(b) prohibition is significantly different from that in section 10012, in that section 6(b) was a blanket prohibition: it prohibited all support, endorsement or opposition. In this way it is very much like the statutes in the cases we distinguished in our discussion regarding the ballot statements. *See, e.g., Brown v. Hartlage,* 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982), *Vanasco v. Schwartz,* 401 F.Supp. 87 (E.D.N.Y.1975), *aff'd,* 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 630 (1976); *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *Mills v. Alabama,* 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966).

Noting that the ban is total, the en banc panel reported with approval that

> [a]ccordingly, the district court below specifically found that the State could adequately safeguard the interests § 6(b) was designed to protect by less drastic means, including provision for nonpartisan methods of nominating candidates for local and judicial offices and *controls on partisan activities of the candidates.*

*Geary,* 911 F.2d at 285 (emphasis added). We find the restriction on candidate statements a less drastic, valid control on partisan activity. The en banc decision drops a footnote after the above quoted material recognizing some other valid regulations used to preserve the nonpartisan character of local elections:

> In fact, the California Elections Code features several provisions designed to preserve the nonpartisan character of local and judicial elections. To begin with, we note that Section 37 of the Code explicitly forbids party participation in the nomination of candidates for nonpartisan

office.... In addition, the Code contains provisions stating that declarations of candidacy and other nomination papers may not refer to party affiliation (§ 6401.5); the name of the party to which a candidate for nonpartisan office belongs may not appear on the ballot (§ 10200.5); a voter may cast his ballot for a candidate for nonpartisan office without regard to party affiliation (§ 10214); and partisan and nonpartisan offices are to be listed in separate columns on the ballot form (§ 10207).

*Id.* at 285 n. 4. Section 10012's restriction, like these controls, is limited and aids in the establishment of the nonpartisan governmental structure chosen by California in a narrowly tailored manner.

Since the restriction serves the government's interest in retaining the limited subject matter purpose of its limited public forum in a least restrictive manner, we hold that section 10012 does not violate the first or fourteenth amendment.

## CONCLUSION

We hold that sections 3795, 5025, 10012 and 10013.5 of the California Elections Code do not violate the first amendment. The district court is AFFIRMED IN PART and REVERSED IN PART.