[No. A033408. First Dist., Div. Four. Oct. 28, 1986.]

STONY GEBERT, Plaintiff and Appellant, v.
JAY PATTERSON, as Registrar of Voters, etc.,
Defendant and Respondent.

COUNSEL

Arlo Hale Smith for Plaintiff and Appellant.

George Agnost, City Attorney, and Thomas J. Owen, Deputy City Attorney, for Defendant and Respondent.

OPINION

**ANDERSON, P. J.**—The issue here presented for the first time in California is whether a local regulation which requires the proponent of a ballot argument to pay a fee before it is published in the voter's handbook is constitutional.

Stony Gebert (appellant) was the indigent proponent of the Marijuana Privacy Act Initiative (Prop. G) on the November 1985 ballot for the City and County of San Francisco. In August 1985, he submitted to Jay Patterson, the San Francisco Registrar of Voters (respondent) a ballot argument in favor of Proposition G—the Marijuana Initiative Fund measure—together with a declaration of indigency. Respondent returned the argument for failure to prepay the estimated printing costs of $500. A subcommittee of the San Francisco Board of Supervisors subsequently concluded that it lacked au-

thorization to waive the fee requirement. Appellant petitioned the superior court for a peremptory writ of mandate to require respondent (1) to accept his ballot argument for inclusion in the voter information pamphlet and (2) to waive the publication fee required by the San Francisco Administrative Code. On appeal from the court's judgment denying his petition appellant challenges this ordinance on several grounds, citing both state and federal constitutional provisions. We hold that section 5.74 of the San Francisco Administrative Code does violate state and federal guarantees of equal protection by qualifying an individual's participation in the electoral process solely upon his ability to pay the administrative (i.e., publication) costs.

## I. *Mootness*

■ Under certain conditions, disputes concerning election procedures are properly reviewable by an appellate court even though the particular election in question has already taken place. Although a writ of mandate would now be a meaningless remedy for appellant,[1] we nonetheless may consider his contentions since the issues raised are of general public interest, and are likely to occur in future elections in a manner evasive of timely appellate review. (*Unger* v. *Superior Court* (1984) 37 Cal.3d 612, 614 [209 Cal.Rptr. 474, 692 P.2d 238]; *Ferrara* v. *Belanger* (1976) 18 Cal.3d 253, 259 [133 Cal.Rptr. 849, 555 P.2d 1089] [both involving election disputes].) Respondent does not dispute the appropriateness of appellate review on the merits.

## II. *Equal Protection*

### A. *Appellant's Contentions*

■ ■ ■ ■ Appellant's primary line of argument proceeds under federal and state guarantees of equal protection.[2] (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.)

---

[1] We note that the 1985 Marijuana Privacy Act Initiative was defeated in the November election. Our concern here is not with the merit of that initiative.

[2] There is no merit to appellant's contention that California statutory law entitles him to submit a free ballot argument in favor of his initiative. While Elections Code sections 4015 and 3714 do permit the proponent of an initiative to submit one argument free of charge in city and county elections, this case involves a chartered city and county. Article II, section 11 of the California Constitution expressly states: "Initiative and referendum powers may be exercised by the electors of each city or county under procedures that the Legislature shall provide. This section *does not affect a city having a charter.*" (Italics added.)

Accordingly, we look to the procedures for submission of ballot arguments contained in the charter rather than those in the general law. Since section 9.112 of the San Francisco Charter empowers the board of supervisors to regulate submission of ballot arguments, we conclude that San Francisco's duly enacted ordinances on this subject prevail over those of the Elections Code.

Under section 5.74 of the San Francisco Administrative Code, "Any individual voter, group of voters, or association of citizens, or any combination thereof, upon deposit of an amount sufficient to defray the cost of printing as estimated by the Registrar of Voters, may submit to the Registrar of Voters for action pursuant to the provisions of this article, a written argument for or against any measure which is to be voted on at any election in the City and County." Although the purpose of the fee is to "defray the cost of printing" (i.e., a cost incurred upon publication of a given ballot argument), payment of the fee serves as a *precondition* to submission of an argument.

Appellant's equal protection challenge to San Francisco's fee scheme presupposes that the voter's pamphlet is a public forum under the First Amendment. He argues that denial of access to this forum for those unable to pay the fee is impermissible. We agree.

## B. *Special Status of the Voter's Pamphlet*

As this is a case of first impression, there is a dearth of authority directly addressing an indigent's equal protection challenge to an ordinance which requires prepayment of printing costs for ballot arguments. Appellant's primary authority—*Ferrara v. Belanger* (1976) 18 Cal.3d 253 [133 Cal.Rptr. 849, 555 P.2d 1089]—involved two nonindigents' challenge to provisions of the Elections Code under which a city clerk had distinguished initiative proponents from other supporters of a measure for submission of ballot arguments. *Ferrara* resolved the matter through statutory interpretation and did not settle the "serious equal protection questions" therein presented. (At p. 257.) Nevertheless, certain constitutional principles are discernible with relation to ballot arguments.

"The central purpose of the First Amendment 'is to give to every voting member of the body politic the fullest possible participation in the understanding of those problems with which the citizens of a self-governing society must deal. . . .' (A. Meiklejohn, Political Freedom: The Constitutional Powers of the People (1960) p. 75.)" (*Briscoe v. Reader's Digest Association, Inc.* (1971) 4 Cal.3d 529, 534-535 [93 Cal.Rptr. 866, 483 P.2d 34, 57 A.L.R.3d 1].) To serve this general purpose, the United States Supreme Court has recently developed the "public forum" doctrine to address First Amendment rights in relation to public channels of communication. (See *Perry Ed. Assn. v. Perry Local Educators' Assn.* (1983) 460 U.S. 37, 45-46 [74 L.Ed.2d 794, 804-805, 103 S.Ct. 948].)

Although state legislation permitting ballot arguments in the voter's pamphlet originated as early as 1911 (*Ferrara v. Belanger, supra,* 18 Cal.3d

at p. 263), we cannot conclude that the voter's pamphlet comes within the definition of a traditional public forum.

The speech activities permitted in the voter's pamphlet—unlike those in traditional public fora such as streets and parks—are narrowly circumscribed to the ballot measures proposed for public consideration. The California Supreme Court has long recognized that the "essential purpose of [ballot argument] provisions is to give the voters information concerning the measures on the ballot." (*Hart* v. *Jordan* (1939) 14 Cal.2d 288, 292 [94 P.2d 808].) As such, the voter's pamphlet more closely fits the definition of a "limited" public forum (see *Perry Ed. Assn.* v. *Perry Local Educators' Assn., supra,* 460 U.S. at p. 46, fn. 7 [74 L.Ed.2d at p. 805, fn. 7]) which "may be created by government designation of a place or channel of communication for use *by the public at large . . .* for the discussion of *certain* subjects. [Citation.]" (*Cornelius* v. *N.A.A.C.P. Legal Defense & Ed. Fund* (1985) 473 U.S. 788, 802 [87 L.Ed.2d 567, 580, 105 S.Ct. 3439], italics added.)

██ In traditional public fora, the government "may not prohibit all communicative activity." (*Perry Ed. Assn.* v. *Perry Local Educators' Assn., supra,* 460 U.S. at p. 45 [74 L.Ed.2d at p. 804].) In the case of a limited public forum, however, the government is "not required to indefinitely retain the open character of the facility . . . ." (*Id.,* at p. 46 [74 L.Ed.2d at p. 805].)

But it is well settled that once the city has chosen to open a public forum, "*equal access* must be provided to all competing factions." (*Stanson* v. *Mott* (1976) 17 Cal.3d 206, 219 [130 Cal.Rptr. 697, 551 P.2d 1], italics added.) ██ In reference to the voter's pamphlet, the principle of equal access carries special significance due to the significant impact that the pamphlet can have on the equality and fairness of the electoral process. Unlike other vehicles for partisan political argument, the pamphlet is printed by a governmental body and distributed to all registered voters. The arguments set forth therein are likely to "carry greater weight in the minds of the voters than normal campaign literature . . . ." (*Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 352 [116 Cal.Rptr. 97, 525 P.2d 1273].) In addition, an argument contained in the voter's pamphlet can influence the judicial process since, in many instances, such pamphlets "may constitute the only legislative history of an initiative measure adopted by the voters." (*Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 866 [167 Cal.Rptr. 820, 616 P.2d 802].)

### C. *Constitutionality of the General Fee Requirement*

Although we find no cases specifically addressing the constitutionality of fees for the presentation of ballot arguments, the issue is closely analogous

to cases involving equal protection challenges to filing fees required of candidates for public office. In *Bullock* v. *Carter* (1972) 405 U.S. 134, 138 [31 L.Ed.2d 92, 97, 92 S.Ct. 849], the United States Supreme Court struck down a Texas statute which required candidates to pay a substantial filing fee as a precondition to having the candidate's name placed on the primary ballot. Consistent with *Bullock, Lubin* v. *Panish* (1974) 415 U.S. 709, 718 [39 L.Ed.2d 702, 710, 94 S.Ct. 1315] (statute requiring prepaid filing fee in order to have name placed on ballot) held that "in the absence of reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay."

*Knoll* v. *Davidson, supra,* 12 Cal.3d 335 (interpretation of a statute to require prepayment of fee to have name placed on primary ballot and to have statement of qualifications placed in voter's information pamphlet) involved an analogous fee clause in the Elections Code. There, the California Supreme Court followed *Bullock* and *Lubin* in holding that the "essential error" of all three systems was that they relied "solely and absolutely upon the payment of a fee, *without providing any alternative procedures* for qualifying as a candidate."[3] (*Id.,* at p. 348, italics added.) Although the indigent plaintiffs in *Bullock, Lubin,* and *Knoll* challenged the respective fee schemes by asserting the constitutional right to seek public office, we are convinced that the First Amendment right to seek access to a public forum is of equivalent status. The question of access to the voter's handbook for ballot arguments is even more closely analogous to access to the voter's handbook for candidate statements of qualifications. ■ In reversing the county's interpretation that state law requires prepayment of publication costs for a candidate to have her "statements of qualifications" printed in the voter's handbook, our Supreme Court held: "It is impermissible for the state or local agency involved to deny this opportunity solely on the basis of wealth, thereby giving an unfair advantage to the affluent and invidiously discriminating against those unable to afford the substantial fees. . . . [T]he County cannot constitutionally require that a candidate pay a fee equal to his pro rata share of the printing and handling costs as a condition to having his statement of qualifications included in the voter's pamphlet." (*Knoll* v. *Davidson, supra,* 12 Cal.3d at p. 352.) How then can the City of San Francisco constitutionally require more from the proponent of an initiative?

Although respondent emphasizes the facial neutrality of the fee ordinance, that characteristic alone did not save the candidacy fees in *Bullock, Lubin,*

---

[3]*Mackey* v. *Panish* (1980) 106 Cal.App.3d 7, 11 [164 Cal.Rptr. 771]—cited as contrary authority by respondent—did not involve an indigent petitioner. Moreover, the prepayment scheme at issue there contained a waiver provision for indigent candidates. (*Ibid.*)

and *Knoll*. In addressing a similar assertion of content-neutrality in reference to a parade ordinance, the Ninth Circuit reasoned that "however neutral the government's intentions in enacting a law, the operation of that law may have a vastly uneven impact. There is no equality in a law prohibiting both rich and poor from sleeping under the bridges of Paris; there is no equality in a law prohibiting anonymous pamphleteering by both popular and unpopular groups, [citation] . . . ." (*N.A.A.C.P., Western Region* v. *City of Richmond* (9th Cir. 1984) 743 F.2d 1346, 1356.)

Though we agree with respondent that a system of unlimited free ballot arguments would be prohibitively expensive, our reasoning does not compel adoption of such a plan or, indeed, of any particular system for publication of ballot arguments. As *Knoll* v. *Davidson, supra,* 12 Cal.3d 335 makes clear, the equal protection clause mandates only that access not be conditioned upon wealth.

For example, respondent could adopt the framework established in the Elections Code which balances the ideal of access to the voter's pamphlet with the limitations on public resources. Under that system, the legislative body or "any individual voter" may submit a ballot argument on any county (Elec. Code, § 3783) or city (Elec. Code, § 5013) measure. Neither section stipulates payment of a fee as a precondition of filing. Where more than one argument on either side has been submitted, the city or county clerk is empowered to select—subject to express statutory criteria—one argument for and one argument against the measure for actual publication. (Elec. Code, §§ 3786, 5016.)

By permitting individuals to submit ballot arguments for publication in the voter's information pamphlet, the City and County of San Francisco has created a forum for the exercise of political expression. But San Francisco Administrative Code section 5.74 limits admission to this forum to those who pay $500. By doing so, the ordinance denies equal access to a political arena as guaranteed by the equal protection clause of the Fourteenth Amendment, but also impedes free expression as guaranteed by the First Amendment.

## III. *Conclusion*

The trial court erred in enforcing section 5.74 of the San Francisco Administrative Code by denying appellant's petition for peremptory writ of mandate to compel respondent to waive the publication fee that serves as a precondition to *submission* of a ballot argument. We hold that the prepayment fee system here in question violates state and federal guarantees of equal protection.

The judgment denying the petition for writ of mandate is reversed and the cause remanded to the trial court with directions to dismiss the petition as moot. Appellant is awarded costs.

Poché, J., and Sabraw, J., concurred.