[No. C060441. Third Dist. Jan. 27, 2011.]

HOWARD JARVIS TAXPAYERS ASSOCIATION et al., Plaintiffs and Appellants, v.
DEBRA BOWEN, as Secretary of State, etc., Defendant and Respondent;
GEOFF BRANDT, as State Printer, etc., et al., Real Parties in Interest and Respondents.

COUNSEL

Trevor A. Grimm, Jonathan M. Coupal and Timothy A. Bittle for Plaintiffs and Appellants.

David L. Lewellyn, Jr., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Jonathan K. Renner, Assistant Attorney General, Stephen P. Acquisto and Ross C. Moody, Deputy Attorneys General, for Defendant and Respondent and for Real Parties in Interest and Respondents Geoff Brandt, State Printer, Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General.

Diane F. Boyer-Vine, Robert A. Pratt and Marian M. Johnston for Real Party in Interest and Respondent California State Legislature.

## OPINION

**SCOTLAND, J.**[*]—California voters have a powerful tool, the ballot initiative, to make public policy. (Cal. Const., art. II, § 8, subd. (a) ["The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them."], art. IV, § 1 ["The legislative power of this State is vested in the California Legislature . . . but the people reserve to themselves the powers of initiative and referendum."].)

Indeed, it was by a ballot initiative, Proposition 9, that voters adopted the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.; Political Reform Act or Act) to address, among other things, potential abuse of the very process by which voters adopted Proposition 9. (Gov. Code, § 81000 et seq.; further section references are to the Government Code unless otherwise specified.)[1]

---

[*] Retired Presiding Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] The potential abuse stems from the reality that (1) initiatives are often drafted by special interest groups, which pay petition circulators to get the needed number of voters to sign petitions (usually without reading them) to qualify the initiatives for the ballot, and employ political consultants to raise money and mount clever media campaigns to paint the initiatives in the light most favorable to their adoption (see Assem. Conc. Res. No. 13, Stats. 1991 (1991–1992 Reg. Sess.) res. ch. 120, p. 6162); (2) few voters have the desire and the fortitude to read the lengthy wording of the initiatives contained in the ballot pamphlet prepared by the Secretary of State (see § 81001, subd. (g) ["The influence of large campaign contributors in ballot measure elections is increased because the ballot pamphlet . . . is difficult to read and almost impossible for a layman to understand . . . ."]); (3) in evaluating the merits of initiative

The purposes to be accomplished by the Political Reform Act are set forth in section 81002, including subdivision (d), which provides: "The state ballot pamphlet should be converted into a useful document so that voters will not be entirely dependent on paid advertising for information regarding state measures."

To this end, the Political Reform Act's section 88002 requires that, for "each state measure to be voted upon," the ballot pamphlet must contain certain information, including a ballot "title" (§ 88002, subd. (a)(1)) and an "official summary prepared by the Attorney General" (§ 88002, subd. (a)(2)).[2] Other statutes in existence when the Political Reform Act was adopted require that, like the official summary, the "ballot title" must be prepared by the Attorney General (Elec. Code, former §§ 3530, 3531 (Stats. 1961, ch. 23, § 3, pp. 582, 625); now Elec. Code, §§ 303.5, 342, 9004, 9005, 13282) and that, consistent with the Political Reform Act's finding that public officials "should perform their duties in an impartial manner" (§ 81001, subd. (b)), the Attorney General, "[i]n providing the ballot title and summary, . . . shall give a true and impartial statement of the purpose of the measure in such language that the ballot title and summary shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure." (Former Pol. Code, § 1197, subd. (3) (Stats. 1913, ch. 631, § 1, pp. 1157, 1160); now Elec. Code, § 9051, subd. (c).) Also in existence when the Political Reform Act was adopted was the requirement that the "ballot label for measures to be voted on throughout the State shall be composed by the Attorney General and shall be a condensed statement of the ballot title prepared by [the Attorney General]." (Elec. Code, former § 14934 (Stats. 1961, ch. 23, § 3, pp. 582, 782); now see Elec. Code, § 13282.)

In this case, we deal not with an initiative measure, but with another "state measure" that must be approved by voters, namely, a "measure [passed by the

measures, voters usually rely on the political campaigns for and against the measures, as well as information in the ballot pamphlet, including proponents' and opponents' arguments that are not checked for accuracy by any official agency (§ 88002, subd. (f)); and (4) election day polls have shown that many who cast votes have "little or no knowledge" of the content and effect of the initiative measures on the ballot. (Sen. Conc. Res. No. 13, Stats. 1991 (1991–1992 Reg. Sess.) res. ch. 120, p. 6162.)

[2] Section 88002 also provides that, for each state measure to be voted upon, the ballot pamphlet must contain the identification of the measure by its number (subd. (a)(1)), the votes cast for and against the measure in both the state Senate and Assembly, if the measure was passed by the Legislature (subd. (a)(3)), an analysis by the Legislative Analyst (subd. (b)), arguments for and against the measure (when no argument is submitted against the measure, the pamphlet will contain only the argument for the measure) (subds. (c) & (d)), the "following statement . . . at the bottom of each page where arguments appear: 'Arguments printed on this page are the opinions of the authors and have not been checked for accuracy by any official agency' " (subd. (f)), and the complete text of each measure, printed "at the back of the pamphlet" (subd. (e)).

Legislature] providing for the preparation, issuance and sale of bonds of the State of California [which then must] be submitted to the electors in the form of a bond act or statute." (Cal. Const., art. XVI, § 2, subd. (a).)

The question posed is whether, in enacting the "Safe, Reliable, High-Speed Passenger Train Bond Act for the 21st Century" to submit the measure to voters as Proposition 1A at the November 4, 2008 General Election, the Legislature acted lawfully when it specified the ballot label, title and summary to be used and precluded the Attorney General from revising the language other than to include a financial impact statement. (Stats. 2008, ch. 267, § 11, subd. (f)(1) & (2).)

The answer is "No." The Political Reform Act may be amended in two ways: (1) "to further its purposes" if the amendment is passed in each house of the Legislature by a two-thirds vote (Gov. Code, § 81012, subd. (a)); or (2) by the enactment of a statute that is then approved by the electorate (Gov. Code, § 81012, subd. (b)). The Legislature passed the "Safe, Reliable High-Speed Passenger Train Bond Act for the 21st Century" by a two-thirds vote of each house. However, to the extent it specified the ballot label, title and summary to be used, the bill negated the Political Reform Act's requirement that the official summary of the bill be prepared by the Attorney General in addition to the ballot label and title that are prepared by the Attorney General. As we will explain, this ad hoc amendment of the Political Reform Act did not further the purposes of the Act and was not approved by the voters. Thus, it was invalid. Simply stated, the Legislature cannot dictate the ballot label, title and official summary for a statewide measure unless the Legislature obtains approval of the electorate to do so prior to placement of the measure on the ballot.

## DISCUSSION

### I

Assembly Bill No. 3034 (2007–2008 Reg. Sess.), the "Safe, Reliable High-Speed Passenger Train Bond Act for the 21st Century" (Stats. 2008, ch. 267, § 9 (hereafter "High-Speed Train Bond Act")), provided for the issuance of $9.95 billion of general obligation bonds, $9 billion of which would be available, along with any available federal and private funds, for the planning and construction of a high-speed train system to connect California's major metropolitan areas, and $950 million of which would be available for capital projects on other passenger rail lines connecting to the

high-speed train system. (*Ibid.*) The measure was passed by a two-thirds vote of the Legislature, was approved by the Governor on August 26, 2008, and was submitted to the Secretary of State that same day. (Stats. 2008, ch. 267 (introductory headings).) As required by article XVI, section 2, subdivision (b) of California's Constitution, the measure would not be effective unless approved by the voters.

The Legislature placed the measure on the November 4, 2008 General Election ballot (Stats. 2008, ch. 267, §§ 10, 11) "notwithstanding the requirements of Sections 9040 [(which states a bond measure 'shall appear on the ballot of the first statewide election occurring *at least 131 days after the adoption of the proposal by the Legislature*' (italics added))], 9043 [(time for submission of arguments prepared by legislators)], 9044 [(time for submission of arguments by voters)], and 9061 [(time for mailing press release)] of the Elections Code or any other provision of law." (Stats. 2008, ch. 267, § 11, subd. (a).) The Legislature also specified that, "[n]otwithstanding Sections 13115 and 13117 of the Elections Code [(specifying the order in which measures will appear on the ballot)]," the High-Speed Train Bond Act "shall be placed as the first ballot measure . . . and shall be designated as Proposition 1A." (Stats. 2008, ch. 267, § 11, subd. (b).)

In addition, the Legislature required that, "[n]otwithstanding any other provision of law, all ballots of the November 4, 2008, general election shall have printed thereon as the ballot label for Proposition 1A the following: [¶] 'SAFE, RELIABLE HIGH-SPEED PASSENGER TRAIN BOND ACT. [¶] To provide Californians a safe, convenient, affordable, and reliable alternative to driving and high gas prices; to provide good-paying jobs and improve California's economy while reducing air pollution, global warming greenhouse gases, and our dependence on foreign oil, shall $9.95 billion in bonds be issued to establish a clean, efficient high-speed train service linking Southern California, the Sacramento/San Joaquin Valley, and the San Francisco Bay Area, with at least 90 percent of bond funds spent for specific projects, with federal and private matching funds required, and all bond funds subject to independent audits?' " (Stats. 2008, ch. 267, § 11, subd. (c).)

The Legislature also specified that, "[n]otwithstanding any other provision of law, the Secretary of State shall use the following as the ballot title and summary for Proposition 1A: [¶] 'SAFE, RELIABLE HIGH-SPEED PASSENGER TRAIN BOND ACT. [¶] Provides long-distance commuters with a safe, convenient, affordable, and reliable alternative to driving and high gas prices.

[¶] Reduces traffic congestion on the state's highways and at the state's airports. [¶] Reduces California's dependence on foreign oil. [¶] Reduces air pollution and global warming greenhouse gases. [¶] Establishes a clean, efficient 220 MPH transportation system. [¶] Improves existing passenger rail lines serving the state's major population centers. [¶] Provides for California's growing population. [¶] Provides for a bond issue of $9.95 billion to establish high-speed train service linking Southern California counties, the Sacramento/San Joaquin Valley, and the San Francisco Bay Area. [¶] Provides that at least 90% of these bond funds shall be spent for specific construction projects, with federal and private sector matching funds required. [¶] Requires that use of all bond funds is subject to independent audits. [¶] Appropriates money from the General Fund to pay bond principal and interest.' " (Stats. 2008, ch. 267, § 11, subd. (f)(1).)

And the Legislature required that, "[n]otwithstanding Sections 13247 [(limitation on total number of words in the ballot statement, and title, and financial impact summary)] and 13281 of the Elections Code [(former statute specifying the Attorney General shall prepare the ballot label and title)]" or "any other provision of law," the above quoted ballot title and summary "shall be the only language" included on the ballot as the ballot label, title and summary for Proposition 1A, and "the Attorney General shall not supplement, subtract from, or otherwise revise that language," except for providing a financial impact summary. (Stats. 2008, ch. 267, § 11, subds. (d) & (f)(2).)

II

Prior to the 2008 general election, the Howard Jarvis Taxpayers Association and taxpayer Kris Vosburgh (appellants) petitioned the superior court for a writ of mandate directing the Secretary of State to "request an impartial Ballot Label, Title and Summary from the Attorney General, and to use them in lieu of the Ballot Label, Title and Summary furnished by the Legislature."

Appellants asserted that the Legislature violated article II, section 4 of California's Constitution by "attempting to influence the election with its own one-sided Ballot Label, Title, and Summary." According to appellants, "the Legislature, as author and proponent of Proposition 1A, has a conflict of interest in preparing an impartial Ballot Label, Title, and Summary," and "the Label, Title, and Summary it prepared for Proposition 1A are, in fact, not impartial," but rather "resemble campaign literature, containing nonfactual opinion and statements that are false or misleading."

In the alternative, appellants asked the court to direct the Secretary of State "to strike from the Legislature's Ballot Summary the sentence: 'Provides that at least 90% of these bond funds shall be spent for specific construction projects, with federal and private sector matching funds required' [citation], and the similar phrase in the Legislature's Ballot Label: 'with at least 90 percent of bond funds spent for specific projects, with federal and private matching funds required' [citation]."[3] According to appellants, these statements were "false or misleading" and should be stricken. (See Elec. Code, § 9092 [a peremptory writ of mandate may issue to strike language shown by clear and convincing proof to be false or misleading].)

Opposing the petition, the Legislature, as real party in interest, argued that "the authority to designate the author of the ballot materials of a measure placed by the Legislature before the voters rests with the Legislature, and the Legislature's assignment of this responsibility to itself was completely within its discretion." It further asserted that the specific statements sought to be stricken were neither false nor misleading, and thus should not be deleted from the ballot materials.

Saying it "declines to read into the Constitution's general terms a specific requirement that Legislature-drafted ballot information must be totally impartial," the superior court rejected the request to order the Secretary of State to obtain substitute ballot materials from the Attorney General. But the court ordered that the ballot summary of Proposition 1A be modified to state: "Provides that at least 90% of these bond funds shall be spent for specific construction projects, with *private and public matching funds required, including, but not limited to, federal funds, funds from revenue bonds, and local funds*." (Italics indicate modification.) A similar modification was ordered to the ballot label of Proposition 1A.

Proposition 1A passed by a slim margin on election day. (See Gen. Elec. (Nov. 4, 2008) Statement of Vote <http://www.sos.ca.gov/elections/sov/2008_general/sov_complete.pdf> [as of Jan. 27, 2011].)

### III

We begin our analysis by rejecting the Legislature's contention that this appeal should be dismissed as moot because "the election is over, and the bond measure has been approved by the voters."

---

[3] We grant the Legislature's request, as real party in interest and respondent, for judicial notice of chapter 267 of the Statutes of 2008 and of the ballot materials for Proposition 1A.

Appellant sought the issuance of a writ of mandate directing the Secretary of State to request a substitute ballot label, title and summary from the Attorney General, and to print them in the general election ballot pamphlet. The passage of Proposition 1A makes this "a meaningless remedy." (*Gebert v. Patterson* (1986) 186 Cal.App.3d 868, 872 [231 Cal.Rptr. 150].)

Appellants acknowledge that they "are not asking to have the election invalidated or issuance of the bond enjoined." Rather, they "simply want this Court to determine whether the Superior Court erred by not issuing a writ directing the Legislature, in light of its conflict of interest, to have the Attorney General or another disinterested party write the impartial materials for the voters."

As appellants correctly point out, this appeal challenges a practice that has been used by the Legislature with increasing frequency in recent elections[4] and "is likely to recur in future elections, yet evade review due to the short deadline for printing ballots." We also agree with appellants that this appeal involves a matter "of continuing public interest." Consequently, we exercise our discretion to address the merits of the appeal. (*Huening v. Eu* (1991) 231 Cal.App.3d 766, 770 [282 Cal.Rptr. 664] [even if the relief sought in the superior court is no longer available, appellate review of disputes concerning election procedures "may be appropriate if the contentions raised are of general public interest 'and are likely to occur in future elections in a manner evasive of timely appellate review' "]; see also *Clark v. Burleigh* (1992) 4 Cal.4th 474, 481 [14 Cal.Rptr.2d 455, 841 P.2d 975].)

IV

Appellants raise a constitutional challenge premised on their claim that the Legislature had a conflict of interest and did not act impartially when it dictated the ballot label, title and summary of the bond act that it had championed.

---

[4] The Legislature designated the ballot label, title and summary for a proposition on the June 5, 1990 Primary Election ballot. (Stats. 1989, ch. 106, § 23.5, p. 1016.) Fourteen years later, the Legislature designated the ballot label, title, and summary for a proposition on the March 2, 2004 Primary Election ballot. (Stats. 2003, 5th Ex. Sess. 2003–2004, ch. 1, p. 7097.) The Legislature also designated ballot labels for three propositions on the November 7, 2006 General Election ballot. (Stats. 2006, ch. 25, § 4; Stats. 2006, ch. 27, § 6; Stats. 2006, ch. 35, § 22.) At the Legislature's request, we take judicial notice of chapter 7 of the Statutes of 2009. This shows the practice has continued during the pendency of this appeal; the Legislature designated the ballot label, title, and summary for six propositions on the May 19, 2009 Special Election ballot. (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 7, §§ 2–7.)

According to appellants, rather than being neutral, the label, title and summary prepared by the Legislature for the High-Speed Train Bond Act had a "promotional tenor"—"more than inform," they "advocated." Claiming the Legislature used the label, title and summary to "lavish praise on its measure in language that virtually mirrored the argument in favor of the proposition," appellants protest that "advocacy of an interested party appeared on the ballot masquerading as objective voter guidance." This, they contend, violated article II of the California Constitution, which says in part that the Legislature shall provide for "free elections" (*id.*, § 3) and "prohibit improper practices that affect elections" (*id.*, § 4). In appellants' view, the "expressed public policy of sections 3 and 4" is "elections must be free from government manipulation and other improper practices designed to affect the vote."

We need not decide the merits of this constitutional challenge because, for reasons that follow, appellants prevail on another ground. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225] [courts " ' "will not decide constitutional questions where other grounds are available and dispositive of the issues of the case" ' "]; see also *Lyng v. Northwest Indian Cemetery Prot. Assn.* (1988) 485 U.S. 439, 445 [99 L.Ed.2d 534, 544, 108 S.Ct. 1319] ["A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."].)

V

The Legislature commendably raises the issue whether its action ran afoul of the Political Reform Act, which provides, among other things, that, for "each state measure to be voted upon," the ballot must contain "[t]he official summary prepared by the Attorney General." (§ 88002, subd. (a)(2).)

It concedes that, "[i]f this reference is construed as a mandate in the [Political Reform Act] that only the Attorney General may prepare the ballot summary, then [the provision of the High-Speed Train Bond Act at issue in this appeal], and any other statute that instead gives this responsibility to anyone other than the Attorney General, amends the [Political Reform Act] and must follow the requirements for amending the [Act] to be valid."

The Legislature contends, however, that it did not amend the Political Reform Act because "[n]othing in the [Act] prevents the Legislature from specifying, by statute, who is to draft the ballot label and the ballot title and

summary that appear in the ballot pamphlet." In its view, "[g]iven the purpose of Government Code section 88002, . . . the provision of that section that refers to the 'official summary prepared by the Attorney General' was intended merely to identify the document as an element of the ballot pamphlet, describing that document by reference to the then-existing statutory scheme . . . . [Therefore,] the reference to the Attorney General in this context was merely descriptive and explanatory. Nothing in the [Political Reform Act] supports the inference that this wording instead was meant to convey to the voters the separate purpose of requiring that only the Attorney General could lawfully exercise this function."

Appellants counter that Government Code section 88002 means what it says, and the only way the Legislature can take over the task of preparing a ballot label, title and summary on an ad hoc basis is to amend the statute in compliance with the Political Reform Act—which, appellants argue, did not occur.

To determine which party is correct, we apply well-established rules of statutory interpretation.[5]

■ "When construing a statute, a court seeks to determine and give effect to the intent of the enacting legislative body." (*People v. Braxton* (2004) 34 Cal.4th 798, 810 [22 Cal.Rptr.3d 46, 101 P.3d 994].) " 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 [31 Cal.Rptr.3d 591, 115 P.3d 1233].) But if the statutory language may reasonably be given more than one interpretation, " ' "courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." ' " (*People v. Yartz* (2005) 37 Cal.4th 529, 538 [36 Cal.Rptr.3d 328, 123 P.3d 604]; see *People v. Garcia* (2002) 28 Cal.4th 1166, 1172 [124 Cal.Rptr.2d 464, 52 P.3d 648].)

■ Section 88002, subdivision (a)(2) is unambiguous. Not only does it say the "Attorney General" shall prepare the ballot summary for each state

---

[5] Although the issue is not tendered in appellant's opening brief, we address it because (1) it is a dispositive question of law raised in respondent Legislature's brief and then addressed in appellants' reply brief as well as by the parties at oral argument in this court, and (2) the issue was raised in appellants' opening brief in another appeal challenging the Legislature's taking from the Attorney General the duty to prepare the ballot label, title and summary for a measure submitted to the voters at a special election in May 2009—an appeal we have dismissed at the parties' request because the issue has been raised, and can be decided, in the case now before us.

measure to be voted upon, it characterizes the writing as the "official" ballot summary. The plain, commonsense meaning of these words is that the Political Reform Act intended that the Attorney General have the *exclusive authority* to prepare the ballot summary. This construction of the statute is consistent with the purposes of the Political Reform Act which, among other things, are to promote impartiality and eliminate conflicts of interest in the performance of governmental duties. (§ 81001.) It is also consistent with a statute dating back to 1913, which has specified that, in preparing the ballot title, "the Attorney General shall give a true and impartial statement of the purpose of the measure in such language that the ballot title . . . shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure." (Elec. Code, § 9051, subd. (c); see former Pol. Code, § 1197, subd. (3); Stats. 1913, ch. 631, § 1, pp. 1157, 1160.) And it is consistent with section 9003 of the Elections Code, which addresses the situation where the Attorney General has a conflict of interest with respect to the preparation of a ballot title and summary of a proposed initiative measure. Enacted in 1994 by a two-thirds vote of the Legislature in furtherance of the purposes of the Political Reform Act, this statute stated: "In the event that the Attorney General is a proponent of a proposed measure, the title and summary of the chief purpose and points of the proposed measure, including an estimate or opinion on the financial impact of the measure, shall be prepared by the Legislative Counsel, and the other duties of the Attorney General specified in this chapter with respect to the title and summary and an estimate of the financial effect of the measure shall be performed by the Legislative Counsel." (Stats. 1994, ch. 920, § 2, p. 4690 [amended in 2009 to change "title and summary" to "circulating title and summary" (Stats. 2009, ch. 373, § 9)].)

(3)   Moreover, a contrary interpretation of the statute could lead to strange consequences. As acknowledged by the Legislature's counsel at oral argument in this court, its view of section 88002, subdivision (a)(2) would mean that the Legislature could delegate to anyone the responsibility of preparing the official ballot summary of a statewide measure. This necessarily could include the sponsor of the measure, a political action committee, or any other person or entity with a vested interest in passage of the measure. This result would be so inconsistent with the purpose of the Political Reform Act that it could be deemed absurd. (*In re Luke W.* (2001) 88 Cal.App.4th 650, 655 [105 Cal.Rptr.2d 905] [a court "must select the construction that comports most closely with the apparent intent of the [legislation], with a view to promoting rather than defeating the general purpose of the statute" and "must avoid an interpretation leading to absurd consequences"].)

Accordingly, we reject the Legislature's assertion that the reference to the Attorney General in section 88002, subdivision (a)(2) is "merely descriptive and explanatory" and did not convey to the voters who approved the Political Reform Act that only the Attorney General can lawfully exercise the

function of preparing the official ballot summary. By taking that function away from the Attorney General with respect to the High-Speed Train Bond Act, and itself dictating the official summary for the act, the Legislature in effect amended section 88002, subdivision (a)(2). (See *Franchise Tax Board v. Cory* (1978) 80 Cal.App.3d 772, 776 [145 Cal.Rptr. 819] [a statute that "takes away from an existing statute is considered an amendment"; an amendment is " 'any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form' "].)

For reasons that follow, the Legislature also in effect amended the Political Reform Act's section 88002, subdivision (a)(1) by taking away from the Attorney General the preparation of the ballot title for the High-Speed Train Bond Act.

When subdivision (a)(1) of section 88002 was adopted to specify that the ballot pamphlet must contain, among other things, a ballot "title" and number for each statewide measure, existing law provided that, like the official summary, the "ballot title" must be prepared by the "Attorney General," "may differ from the legislative or other title of the measure," and "shall express in not exceeding 100 words the purpose of the measure." (Elec. Code, former §§ 3530, 3531 (Stats. 1961, ch. 23, § 3, pp. 582, 625); now Elec. Code, §§ 303.5, 342, 9004, 9005, 13282.) Existing law also required that, "[i]n providing the ballot title and summary," the Attorney General "shall give a true and impartial statement of the purpose of the measure in such language that the ballot title and summary shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure." (Former Pol. Code, § 1197, subd. (3) (Stats. 1913, ch. 631, § 1, pp. 1157, 1160); now Elec. Code, § 9051.)

Thus, we must interpret "title" in section 88002, subdivision (a)(1) to mean the ballot title prepared by the Attorney General. (See *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [103 Cal.Rptr.2d 751, 16 P.3d 166] [words of a statute must be considered "in the context of the entire . . . statutory scheme of which it is a part, giving significance to every word . . . in pursuance of the legislative purpose"]; *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 642–643 [59 Cal.Rptr.2d 671, 927 P.2d 1175] [a statute must be interpreted "in context, examining other legislation on the same subject"; a word given a particular meaning in one part of the law " 'should be accorded the same meaning in other parts or portions of the law' "]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] ["provisions relating to the same subject matter must be harmonized to the extent possible"]; *In re Luke W., supra,* 88

Cal.App.4th at p. 655 [a court "must select the construction that comports most closely with the apparent intent of the [legislation], with a view to promoting rather than defeating the general purpose of the statute"].) To construe section 88002, subdivision (a)(1) as the Legislature urges would defeat the purpose of the Political Reform Act to promote impartiality and eliminate conflicts of interest in the performance of governmental duties. (§ 81001.) It would also result in the absurd consequence that a ballot title prepared other than by the Attorney General could be inconsistent with the official ballot summary prepared by the Attorney General. (*In re Luke W.*, *supra*, 88 Cal.App.4th at p. 655 [we "must avoid an interpretation leading to absurd consequences"].)

In sum, by taking from the Attorney General the function of preparing the ballot title for the High-Speed Train Bond Act, and itself dictating the ballot title for the Act, the Legislature in effect amended section 88002, subdivision (a)(1). (See *Franchise Tax Board v. Cory, supra*, 80 Cal.App.3d at p. 776.)

The same must be said regarding preparation of the ballot label for the High-Speed Train Bond Act. The "ballot labels" for statewide measures "shall contain a condensed statement in, where possible, not more than 20 words of each measure to be voted on, accompanied by the words, 'Yes' and 'No.' " (Elec. Code, former § 13280.) When the Political Reform Act was adopted by voters in 1974, the Elections Code provided that the "ballot label for measures to be voted on throughout the State shall be composed by the Attorney General and shall be a condensed statement of the ballot title prepared by him." (Elec. Code, former § 14934 (Stats. 1961, ch. 23, § 3, pp. 582, 782); now see Elec. Code, § 13282.) Because, as we have explained, section 88002, subdivision (a)(1) must be construed to require the Attorney General to prepare the ballot title, it also must be interpreted to require the Attorney General to prepare the ballot label, which is nothing more than a condensed statement of the ballot title prepared by the Attorney General. A contrary interpretation would defeat the purposes of the Political Reform Act and could result in absurd consequences.

Therefore, by taking from the Attorney General the function of preparing the ballot label for the High-Speed Train Bond Act, and itself dictating the ballot label for the act, the Legislature in effect amended the Political Reform Act.

We thus turn to the question whether the amendments complied with section 81012, which restricts the Legislature's authority to amend provisions

of the Political Reform Act. (See *Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1483–1484 [76 Cal.Rptr.2d 342] ["When a statute enacted by the initiative process is involved, the Legislature may amend it only if the voters specifically gave the Legislature that power, and then only upon whatever conditions the voters attached to the Legislature's amendatory powers. (Cal. Const., art. II, § 10, subd. (c); *Amwest [Surety Ins. Co. v. Wilson* (1995)] 11 Cal.4th 1243, 1251 [48 Cal.Rptr.2d 12, 906 P.2d 1112].) The purpose of California's constitutional limitation on the Legislature's power to amend initiative statutes is to 'protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent.' "].)

Section 81012, subdivision (a) states the Political Reform Act "may be amended *to further its purposes* by statute, passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring and signed by the Governor, if at least 12 days prior to passage in each house the bill in its final form has been delivered to the commission [(the Fair Political Practices Commission (§ 82012))] for distribution to the news media and to every person who has requested the commission to send copies of such bills to him or her." (Italics added.)

As we have noted, the purposes of the Political Reform Act are, among other things, to promote impartiality and to eliminate conflicts of interest in the performance of governmental duties. Consistent with these purposes, we have construed section 88002, subdivision (a)(1) and (2), provisions of the Political Reform Act, to require the Attorney General to prepare the ballot label, title and official summary for each state measure placed on the ballot for a vote of the electorate. And other statutes enacted consistent with, and in furtherance of the purposes of the Political Reform Act, require the Attorney General to prepare an impartial statement of the purpose of the measure, in language that is not an argument, and is not likely to create prejudice, for or against the measure (Elec. Code, § 9051), and preclude the Attorney General from preparing the ballot title and summary of a measure for which the Attorney General is a proponent (Elec. Code, § 9003).

■ In this light, the Legislature's amendments of the statutory scheme by itself preparing the ballot label, title and summary of Proposition 1A, the High-Speed Train Bond Act, a measure that the Legislature placed on the ballot, cannot be said to "further [the] purposes" of the Political Reform Act.[6]

---

[6] And, at oral argument in this court, the Legislature did not dispute that Assembly Bill No. 3034 (2007–2008 Reg. Sess.) was not delivered in its final form to the Fair Political Practices Commission at least 12 days prior to passage in each house for distribution to the

Accordingly, the amendments do not comply with the limitation on the Legislature's authority set forth in section 81012, subdivision (a).

And they do not comply with section 81012, subdivision (b), which allows the Political Reform Act to be amended "by a statute that becomes effective only when approved by the electors." The parts of the High-Speed Train Bond Act in which the Legislature prepared the ballot label, title and summary of Proposition 1A, and precluded the Attorney General from revising them other than to include a financial impact statement (Stats. 2008, ch. 267, § 11, subd. (f)(1) & (2)) were not submitted to the electorate as part of Proposition 1A and, therefore, were not approved by voters when they adopted Proposition 1A. (Stats 2008, ch. 267, § 9; Supplemental Voter Information Guide, Gen. Elec. (Nov. 4, 2008) text of proposed law, pp. 10–13.)

■ Even if the Legislature had included them in Proposition 1A, the provisions taking away from the Attorney General the responsibility of preparing the ballot label, title and official ballot summary of the measure would not have been a valid amendment of the Political Reform Act. It would defeat the purposes of section 81012 if the Legislature can take over the duty of preparing the ballot label, title and official summary of a measure it puts on the ballot simply by including such provisions in the measure. The Legislature can take over those functions only if it obtains the approval of the electorate to do so prior to placement of the measure on the ballot.

■ Consequently, section 11, subdivisions (c), (d), (f)(1) and (2) of the Statutes of 2008, chapter 267—requiring the Secretary of State to use the ballot label, title and summary prepared by the Legislature for Proposition 1A, and precluding the Attorney General from supplementing, subtracting from, or otherwise revising that label, title and summary except to include a financial impact summary—were invalid amendments of the Political Reform Act.

## DISPOSITION

The judgment of the superior court is reversed to the extent that it denies appellants' petition for a peremptory writ of mandate directing the Secretary of State to obtain from the Attorney General an impartial ballot label, title and summary of Proposition 1A, and to use them instead of those prepared by

news media and to persons who had requested the commission to send copies of such bills to them, as required by section 81012, subdivision (a) to be a valid amendment of the Political Reform Act.

the Legislature. The cause is remanded to the superior court with directions to dismiss the petition as moot. (See *Gebert v. Patterson, supra,* 186 Cal.App.3d at p. 877.) The Legislature shall reimburse appellants for their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3) & (5).)

Nicholson, Acting P. J., and Hull, J., concurred.